IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TERESA SEIDMAN and                    :
ELIMELECH SEIDMAN,                    :
                                      :
          Plaintiff,                  :
                                      :
     v.                               :          Civil Action. No.: 2:24-cv-06033
                                      :
HAMILTON BEACH BRANDS,                :
INC. and AMAZON.COM, INC.,            :
                                      :
          Defendants.                 :

**OPINION**

## I.    INTRODUCTION

In this fight for the friendliest forum, Plaintiffs, Mr. and Mrs. Seidman –
themselves Pittsburghers – chose to file their product liability action in the
Philadelphia County Court of Common Pleas.  Plaintiffs assert that this choice of
forum should be afforded great weight and that it is the most convenient venue for
all parties involved.  For members of the bench and bar familiar with this region's
reputation relative to personal injury and products liability verdicts, the reasons for
Plaintiffs' choice of forum are shrewd.

In response to Plaintiffs' opening move, Defendants have deployed the Rules
of Civil Procedure to try and tow this case away from Philadelphia County and the
Eastern District of Pennsylvania. Defendants argue that venue should be transferred
to Plaintiffs' home forum in the Western District of Pennsylvania, where the injuries

that precipitated this matter occurred.  Defendants' motive to relocate this litigation is equally conspicuous.

For the following reasons, this Court concludes that the interest of justice and overall convenience of the parties weigh in favor of transfer pursuant to 28 U.S.C. § 1404(a).  As such, Defendants' Motion is granted in part and denied in part and this matter is ordered transferred to the United States District Court for Western District of Pennsylvania.

## II.    FACTUAL ALEGATIONS AND PROCEDURAL HITORY

Plaintiff, Teresa Seidman, claims that she suffered severe burns when the plastic handles on her "45 Cup Coffee Urn and Hot Beverage Dispenser" (the "Urn") detached while she was using it, causing boiling hot water to splash on her legs and feet. Pls.' Compl. at 1, 6, 9-11.  Plaintiff is a resident of Pittsburgh and the alleged failure of the Urn causing injury occurred at her home in Pittsburgh.  *Id.* at 3, 5-6. At the referral of the urgent care clinic that initially treated Mrs. Seidman's burn wounds, she presented to the emergency room at the University of Pittsburgh Medical Center (UPMC) Mercy.  *Id.* at 6.  Defendant manufacturer, Hamilton Beach Brands, Inc. (Hamilton), is a Delaware Corporation whose principal place of business is Glen Allen, Virginia.  *Id.*  Amazon, who marketed and ultimately sold the Urn to Plaintiff, is a Delaware Corporation whose principal place of business is Seattle, Washington. *Id.*

Plaintiff filed suit in the Philadelphia County Court of Common Pleas alleging several causes of action arising under Pennsylvania common law, as well as a

2

violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL).[1] *Id.* at 2, 19-26. Defendants removed the matter to this Court based on diversity of citizenship. Defendants then moved to dismiss the Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406, or, alternatively, to transfer this matter to the United States District Court for the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a). Plaintiffs filed a brief in opposition to Defendants' Motion and Defendant's filed a Sur-reply.[2] Defendants' Motion is now ripe for decision.

---

[1] Count I (Strict Products Liability – Design and/or Manufacturing Defect), Count V (Negligence), and Count VII (Loss of Consortium) are all alleged against both Hamilton and Amazon. Count II (Strict Product Liability – Failure to Warn), Count III (Breach of Express Warranty) and Count IV (Breach of Implied Warranties) are alleged against Hamilton only. Count VI is the statutory (UTPCPL) claim alleged against Hamilton only.

[2] Defendants filed a motion for leave to file a sur-reply which was ultimately granted by Judge Costello on December 16, 2024. The Court notes that Defendants' initial motion to dismiss/transfer seems to misapprehend the procedural posture of this case. Accordingly, this Court relies primarily on Defendants' sur-reply to understand their arguments. However, the Court is careful not to permit this reversed presentation of the arguments to similarly reverse the burden Defendants to demonstrate why a transfer is in the interest of justice. *Cf. Chesapeake Thermite Welding, LLC v. Railroad Solutions, Inc.*, Civil No: 1:22-CV-02004, 2024 WL 387687, at *7 (M.D. Pa. Jan. 31, 2024) (finding arguments made in reply brief to be untimely). The Court further notes that it "may *sua sponte* transfer a case pursuant to [Section] 1404(a). *Minter v. Acme Markets, Inc.*, No. 20-1087, 2020 WL 1450860, at *2 (E.D. Pa. Mar. 15, 2020) (*citing Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011).

## III.    DISCUSSION

### a.  Venue is Propper in the Eastern District

Hamilton and Amazon advance two principal arguments challenging venue. Defendants' first argument – that Plaintiffs' suit should be dismissed pursuant to 12(b)(3) and/or Section 1406(a) because venue is improper in the Eastern District of Pennsylvania – confuses the law in the context of removal. *See* Defs.' Mot. to Dismiss at 7-10.[3]  This argument presumes that venue in this action is governed by the provisions outlined in 28 U.S.C. § 1391(b).  It is not.

By its own terms, Section 1391 "govern[s] the venue of all civil actions **brought in district courts** of the United States."  28 U.S.C. § 1391(a)(1) (emphasis added). The United States Supreme Court has long since clarified that Section 1391 only applies to cases **initially** brought in federal court.  *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953).  Section 1391 has no direct application to actions originally filed in state court and then subsequently removed to federal court.  *Id.*; *Minter v. Acme Markets, Inc.*, No. 20-1087, 2020 WL 1450860, at *1 (E.D. Pa. Mar. 15, 2020).

In cases removed based on diversity of citizenship, the applicable venue provision is codified at 28 U.S.C. § 1441.  *See Polizzi*, 345 U.S. at 666.  Section 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United

---

[3] *But see*, Defs.' Sur-reply at 1, n.1 (conceding, after the benefit of Plaintiffs' briefing, that analysis under Section 1406 is improper).

States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

In October of 2024, Plaintiffs filed this action in the Philadelphia Court of Common Pleas – located here in the Eastern District of Pennsylvania. Some weeks later, Defendants, who are incorporated in Delaware and headquartered in Virginia (Hamilton) and Washington (Amazon), removed the case to this Court based on diversity. *See* 28 U.S.C. 1332. Accordingly, venue is properly laid in this Court pursuant to Section 1441(a). *See Polizzi*, 345 U.S. at 665; *Minter*, 2020 WL 1450860, at *2; *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 771 (M.D. Pa. 2005) (Proper venue in a removed action is limited to the federal district and division embracing the place where such an action is pending); *Connors v. UUU Productions, Inc.*, No. Civ.A. 03-6420, 2004 WL 834726, at *5 (E.D. Pa. Mar. 15, 2004). As such, venue is proper in this Court and Defendants' request to dismiss this matter for improper venue is denied.

### b. Transfer under Section 1404(a)

Defendants' second argument, while somewhat unclear, seems to assert this Court should transfer Plaintiffs' case to the Western District of Pennsylvania pursuant to its authority under 28 U.S.C. § 1406. *See* Defs.' Mot. to Dismiss at 10. Defendants go on to argue that in adjudicating its Motion this Court should apply 28 U.S.C. § 1404(a). To be clear, Section 1406 only "applies where the original venue is improper and provides either for transfer or dismissal of the case." *Jumara v. State*

*Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). For reasons already stated, this Court finds that venue is properly laid in the Eastern District of Pennsylvania and therefore Section 1406 is irrelevant to its analysis moving forward.

The balance of Defendants' brief reads as a motion to transfer pursuant to Section 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The statute "provides for the transfer of a case where both the original and the requested venue are proper." *Jumara*, 55 F.3d at 878. In the context of removal from state court, a district court may transfer venue pursuant to Section 1404(a). *See Chesapeake Thermite Welding, LLC v. Railroad Solutions, Inc.*, Civil No: 1:22-CV-02004, 2024 WL 387687, at *6 (M.D. Pa. Jan. 31, 2024).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer … thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal citation and quotation marks omitted). In ruling on a Section 1404(a) motion, "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879.

In evaluating whether a transfer is appropriate, courts are not limited to the factors itemized in Section 1404(a). Instead, courts should consider all relevant

factors to determine whether, on balance, justice and convenience would be better served after a transfer to a different forum. *See id.* (*citing* 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, (2d ed. 1986). The panel in *Jumara* enumerated several private and public factors that district courts should apply to the record when analyzing a motion for a Section 1404(a) transfer. The private interest include:

> [1] Plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claims arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)[.]

*Id.* (internal citations omitted). The public interests include:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive, [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-880 (internal citations omitted).

Defendants seeking a transfer bear the burden of establishing that the above factors counsel in favor of litigating in the alternative venue. However, Courts retain authority to transfer cases under Section 1404 *sua sponte*. *See Id.*; *Minter v. Acme Markets, Inc.*, No. 20-1087, 2020 WL 1450860, at *2 (E.D. Pa. Mar. 15, 2020) (*citing Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011).

But first – the threshold question in evaluating transfer is whether the suit could have been brought originally in the transferee forum. *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001). Neither party contests that this action could have been filed in the District Court for the Western District of Pennsylvania. Defendants concede they are subject to personal jurisdiction in the Western District of Pennsylvania[4] and a substantial part of the events underlying Plaintiffs' claims, including the alleged failure of the Urn and injuries to Mrs. Seidman, occurred in Pittsburgh. *See* 28 U.S.C. § 1391(b)(2-3).[5]

### i.  Private Factors

Against this backdrop, each party presents competing arguments for their preferred venue. Defendants assert that Plaintiffs' choice of forum constitutes "strategic forum shopping[,]" and should be entitled to no deference. Defs.' Sur-reply at 2-3. To support this assertion, Defendants point to the fact that Plaintiffs' "selected forum is neither [their] residence nor the site of events giving rise to the cause of action." *Id.* Plaintiffs argue their choice of "forum is a paramount consideration … and should not be disturbed lightly." Pls.' Br. in Opp'n at 7 (citation omitted). Plaintiffs further contend that "[a]lthough [they] do not reside in the District, this factor still weighs heavily against transfer." *Id.*

---

[4] *See* Defs.' Sur-reply at 3.

[5] For clarity, Section 1391 has no application in determining venue in the context of removal. However, when considering a transfer from one proper venue (one laid as a result of removal under Section 1441) to an alternative venue, the latter is evaluated with an eye toward whether venue would have been proper in that court at the outset of the lawsuit. *See Minter*, 2020 WL 1450860, at *1-*2. Those considerations are governed by the general venue provisions outlined in Section 1391.

Beginning with the first private factor, Plaintiffs' "choice of forum as manifested in the original choice[,]" this Court believes Defendants position carries the day. The Court does not arrive to this decision lightly. As stated above, the Third Circuit has long held that unless the balance strongly favors the defendant, plaintiff's choice of forum should not be lightly disturbed.[6] *See Jumara*, 55 F.3d at 879; *Schutte v. ARMCO Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). However, there are at least three reasons why the circumstances here diminish the deference due to Plaintiffs' preference.

First, the Plaintiffs are not residents of this forum. And, while plaintiff's choice in this regard is typically entitled to substantial weight, when a plaintiff chooses to file outside of their home forum, that choice will receive less deference. *See Trias v. QVC, Inc.*, No. CV 20-813, 2020 WL 2769585, at *2 (E.D. Pa. May 28, 2020) (Kenney, J.) (*citing McCraw v. GlaxoSmithKline*, No. CV 12-2119, 2014 WL 211343, at *4 (E.D. Pa. Jan. 17, 2014). This accords with the majority view of our sister courts around the country. *See, e.g., Mills v. State Corporation Commission of the State of Kansas*, No. 2:20-VC-02626, 2021 4476803, at *2 (D. Kan. Sept. 30, 2021) (the rationale for allowing the plaintiff to dictate the forum evaporates when the plaintiff lives outside the forum); *Tower Laboratories, Ltd. v. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 325

---

[6] While this Court is bound by the Third Circuit's formulation of the law in this area, there has been significant discussion that this law is distilled from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See* 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3848 (4th ed.). *Gulf Oil* dealt specifically with the doctrine of *forum non conveniens* and was decided *before* the enactment of 28 U.S.C. § 1404(a). The Third Circuit has also held that a district court has broader discretion under the Section 1404(a) to transfer a case than under the doctrine of *forum non conveniens*. *See Solomon v. Continental AM. Life. Ins. Co.*, 472 F.2d 1043, 1046 (3d Cir. 1973) (*citing Norwood v. Kirkpatrick*, 349 U.S. 29 (1955)); *Cf. Neff Athletic Lettering Co. v. Walters*, 524 F. Supp. 268, 273 n.2 (S.D. Ohio 1981) (plaintiff's choice of forum may be disregarded under Section 1404(a) for less impelling reasons than under the former doctrine of *forum non conveniens*).

(D.D.C. 2018) (little reason to defer to plaintiff's preference where plaintiff has filed outside of home forum **and** defendant prefers the plaintiff's home forum); *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1083 (N.D. Cal. 2018) (plaintiffs' proximity to district was insufficient to give deference to venue choice when not actually residents of the district).

Second, Plaintiffs find themselves in the District Court for the Eastern District of Pennsylvania by way of removal. Admittedly, the law is more mixed on the impact of removal on plaintiff's choice of forum in the context of Section 1404. However, the fact that Plaintiffs chose to file this matter in Philadelphia County Court of Common Pleas makes plain that this Court was not their first choice. *Cf. Sky Technologies Partners, LLC v. Midwest research Institute*, 125 F. Supp. 2d 286, 292 (S.D. Ohio 2000) (when a case is removed to federal court the plaintiff is no longer in his or her chosen forum). In this Court's judgment, Plaintiffs' first choice – Philadelphia County – cuts against the deference owed to their geographical preference now that the case has been removed.

This Court acknowledges the disagreement in this area. In their brief, Plaintiffs cite *Edwards v. Equifax Information Services, LLC* for the proposition that removal does not diminish plaintiff's initial choice to sue in a particular locale. Pls.' Br. in Opp'n at 7 (*citing Edwards v. Equifax Information Services, LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018) (McHugh, J.)). The defendant in *Edwards* argued that, post-removal, the federal district embracing the state court where the suit was originally filed cannot be deemed the chosen forum under *Jumara's* first factor. *See id.* The Court dismissed this argument as "wordplay," explaining that "Plaintiff's

original choice of Pennsylvania as the forum is not extinguished by a subsequent involuntary removal [and that] [t]he Eastern District of Pennsylvania is equally a 'home' forum to a Bucks County resident as the Court of Common Pleas." *Id; see also Superior Precast, Inc. v. Safeco Ins. Co of America*, 71 F. Supp. 2d. 438, 446-447 (E.D. Pa. 1999) (explaining that Section 1404 balancing is concerned with Plaintiff's geographic choice and the fact that action started in state rather than federal court does not render that geographic choice meaningless).[7] It is noteworthy that there were drastic geographical considerations in *Edwards* that simply are not present here.

In *Edwards*, plaintiff was a resident of the Eastern District, where his case was removed. Here, Plaintiffs are not residents of the district where their case has been removed. In this sense, the removal in this action exposes Plaintiffs' Western District associations. In *Edwards*, once the case was removed, plaintiff (a Bucks County resident) was still at home in the Eastern District of Pennsylvania. Had the court granted defendant's requested transfer, plaintiff would have been forced to litigate in the Northern District of Georgia – about 800 miles away from where the case was originally filed. *See Edwards*, 313 F. Supp. 3d. at 619. Eliminating the weight afforded plaintiff's choice in that situation would have been a harsh calculation in the interest of justice.

This distinction, coupled with the fact that the competing districts are in the same state, impacts the Court's analysis. *Cf. Jumara*, 55 F.3d at 882-883

---

[7] The Court notes that, like Defendants' original Motion to Dismiss in this matter, the court in *Superior Precast* confuses the law on venue in the context of removal. *See* Chesapeake *Thermite Welding, LLC*, 2024, WL 287687, at 8 n.5.

(acknowledging that the interest-of-justice analysis was "obscured" because the two fora were in adjacent districts). The Court in *Edwards* clearly considered the fact that plaintiff's original choice of forum was Pennsylvania (as opposed to Georgia). The *Edwards* analysis does not apply to an intra-state venue dispute such as this one. Additionally, this Court struggles to ignore the fact that removal, in itself, is a limitation on choice of forum. *See Williams v. Connell*, No. 12 Civ. 3593, 2017 WL 2829686, at *8 (E.D. N.Y. June 29, 2017) (*citing U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 752-753 (7th Cir. 2008). Absent specific Third Circuit guidance on this point, the Undersigned concludes that Plaintiffs' decision to file outside of their home forum **combined** with removal, counsels in favor of transfer back to their home forum.

Third, based upon the filings to date, the Eastern District of Pennsylvania has no obvious connection to the case. This consideration dovetails with the third private factor – whether the claims arose elsewhere – but also draws down on the credit typically afforded plaintiff's choice of forum. *See* 15 WRIGHT & MILLER § 3848. Usually, "a plaintiff's choice of forum receives less weight where none of the operative facts occurred in the selected forum." *Snyder v. Bertucci's Restaurant Corp.*, No. 12-5382, 2012 WL 6601384, at *2 (E.D. Pa. Dec. 12, 2012) (citation and internal quotation marks omitted); *see also Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 198 (E.D. Pa. 2008).

To be sure, products liability cases do not always have a single situs, and this may impact the importance of where the alleged harms took place. *See Trias*, 2020 WL 2769585, at *3; *Edwards*, 313 F. Supp. 3d at 621. However, in this case, the

Eastern District has no nexus to the facts at all. No defendant is headquartered here, no witnesses are here, no files or evidence are here, and the plaintiffs are not residents here. While Plaintiffs' point is well taken that situs is harder to value for the purposes of transfer in products liability actions, the cases cited by Plaintiffs in this regard are all distinguishable.[8]

Contrary to the Plaintiffs' passive acknowledgement that they do not reside in the Eastern District, there are multiple matters affecting this first *Jumara* factor. On the whole, the Plaintiffs' residence in the Western District, that none of the critical facts occurred here in the Eastern District, and that the Eastern District is technically not Plaintiffs' first choice (evidenced by the fact that they did not file in this Court first but are here by way of removal), all counsel in favor of transfer to the Western District. It is the combination of the three considerations identified, *supra*, that works to diminish Plaintiffs' choice of forum to its base.

The second private factor, defendant's preferred forum, typically receives short shrift – and rightfully so, considering the great weight generally afforded plaintiff's choice of forum. *See Edwards*, 313 F. Supp. 3d at 622. "The essential question is whether **a combination of other factors** are sufficient to overcome the presumption that the plaintiff's preference governs. [A] transfer is not warranted

---

[8] In *Trias*, defendant sold and promoted the subject product at its headquarters in the Eastern District of Pennsylvania. *Trias*, 2020 WL 2769585, at *3. In *Lempke v. General Electric., Co.*, the Court acknowledged the nature of the products liability action but transferred the case to the Western District of Pennsylvania anyway. Nos. 10-5380 – 10-5426, 2011 WL 3739499, at *5 (E.D. Pa. Aug. 25, 2011). In *Rehmeyer v. Peake Plastics Corp.* the Court found that the lack of an ideal forum that fully encompassed the cause of action counseled slightly in favor of transfer to the place of Plaintiff's injury, but the other factors weighed in favor of no transfer. No. 16-5690, 2017 WL 2079887, at *4 (Hey, M.J).

where the effect would be to shift the inconvenience from the defendant to plaintiff." *Id.* (emphasis added).

Defendants make clear that they would "prefer to defend this case in the Western District."[9] Defs.' Sur-reply at 3. Citing to *Trias*, Plaintiffs argue that this factor is neutral and that since neither Defendant is located in the Western District, "their preference is entitled to next to no weight". Pls.' Br. in Opp'n at 7.

While it is true that the Court in *Trias* found this factor to be neutral, that was in the context of Defendant seeking a transfer **out of its home forum** and into the plaintiffs. *See Trias*, 2020 WL 2769585, at *2. Here, no party has a natural tether to the Eastern District. Plaintiffs are the only party actively seeking to litigate away from home. Accordingly, in light of the diminished deference afforded Plaintiffs' choice in this matter, the Undersigned believes this factor tips in favor of Defendants. *See Tower Laboratories, Ltd., supra.*

The third private factor, location of the claim, has already been discussed at length. In addition to the discussion above, the Court notes that Defendants argue that Plaintiffs' damages arose out of an accident that took place in the Western District. Defs.' Sur-reply at 3-4. To support their argument for transfer, Defendants cite to *Kershner v. Komatsu Ltd.*, 305 F. Supp. 3d 605 (E.D. Pa. 2018) (Rufe, S.J.). Unfortunately, *Kershner* suffers from similar flaws to that of *Superior Precast. See* n.7, *supra.* Conversely, Plaintiffs contend that the nature of their claims, including

---

[9] Defendants also argue that they would be better able to avail themselves of the Federal Rules of Civil Procedure. Specifically, Fed. R. Civ. Pro 34 (entering on land for inspection or other purposes) and Fed. R. Civ. Pro 45(c)(1) (extending plenary subpoena power over persons within 100 miles of residence, employment or the regular transaction of business). Defs.' Sur-reply at 3. These arguments relate to convenience and will be addressed below.

products liability, false advertisement, and breach of warranty, are such that "[t]here is no central locus[.]" Pls.' Br. in Opp'n at 7.

While this Court is receptive to the concept that some causes of action are amorphous, and therefore harder to associate with a particular venue, the static aspects of Plaintiffs' claims all cut in favor of the Western District (residence, where the harm occurred, and where medical care took place). In fact, Plaintiff has failed to point to any persuasive case where venue was laid in a district where neither party was a resident, **and** the injuries giving rise to the cause of action did not occur.

Plaintiffs' best case in this regard is *Rehmeyer*. 2017 WL 2079887. There, plaintiff's injuries occurred in the Middle District of Pennsylvania, the same location as her residence. *Id.* at *1. Defendants were residents of Michigan, Ohio, and Indiana. *Id.* at *2. Plaintiff brought her products liability suit in Philadelphia County Court of Common Pleas and after an improper removal to the Middle District, the case was transferred to the Eastern District. *Id.* at *1. In addressing the third factor in the motion to transfer back to the Middle District, the Court stated:

> There is no dispute that Plaintiff was injured as a result of the ... workplace incident ... in the Middle District, and that no design or manufacturing of the allegedly defective product occurred in the Eastern District. On the other hand, this is not a personal injury case arising from a slip and fall or defect in real property located in a specific location, but rather from an alleged defective product designed and manufactured in perhaps multiple locations in jurisdictions outside Pennsylvania. Therefore, **although this factor weighs in favor of transfer due to the location of Plaintiff's workplace injury**, it does so only marginally.

*Id.* at *4 (emphasis added). Even though the Court in *Rehmeyer* believed this factor weighed in favor of transfer to the location of plaintiff's injury, it found that the combination of the other factors weighed against transfer.

When analyzing the location of the claim, the Undersigned agrees that this factor weighs in favor of transfer. This determination is buttressed by a distinction from *Rehmeyer* in that here, Plaintiff, Mrs. Seidman, ordered the defective product to the Western District for personal use. *See* Pls.' Compl. at 12. Plaintiff purposefully solicited Defendants' products and services at her home in the Western District. In *Rehmeyer* the defective products or materials were presumably ordered by plaintiff's employer and used in the normal course of her employment.

This distinction targets the suit's association with the injured and the location of the injury in a way that is not present in *Rehmeyer*. Stated differently, this case arose out of a purposeful engagement by Plaintiff in the Western District. There was no employer or middleman involved. While the Court does not expect customers to typically order products to places other than the District encompassing their home, the privity present here distinguishes this case from the facts of *Rehmeyer*. In light of the fact that Plaintiffs' choice of venue arrives to this step severely diminished, the Undersigned finds it difficult to credit this factor in their favor.

The fourth private factor, convenience of the parties as indicated by their relative physical and financial condition, has garnered significant attention from both Plaintiffs and Defendants. As previously stated, this forum is not Plaintiffs' "home turf" and has no obvious connection to the operative facts of the lawsuit; as such, "[D]efendant[s'] burden to show that the balance of convenience favors transfer" is

lessened. *Mekiki Co., Ltd. v. Facebook, Inc.*, 2010 WL 2348740, at *4 (D. Del. June 7, 2010); *see also Chapman v. Dell, Inc.*, 2009 WL 1024635, at *4 (W.D. Tex. Apr. 7, 2009).

Defendants note that Plaintiffs' choice of forum would require everyone except for defense counsel to travel to Philadelphia. *See* Defs.' Sur-reply at 4. Plaintiffs argue that this factor favors keeping this case in the Eastern District because of the convenience of air travel to and from the Philadelphia International Airport. Pls.' Br. in Opp'n at 8. Plaintiffs' argument follows that Defendants are likely to put on numerous party-witnesses and that Philadelphia's airport is not only closer to their respective corporate headquarters, but more efficient in terms of frequency of flights as compared to Pittsburgh's airport.[10] *Id.* at 8-9. Plaintiffs also make several suggestions that the Eastern District is more efficient for defense counsel, as they are headquartered in Philadelphia. *Id.* at 3, 5, 11.

Plaintiffs' concern for opposing counsel's ability to put on their case is honorable. However, "[t]he convenience of counsel is not a factor to be considered" under Section 1404(a). *Solomon*, 472 F.2d 1043, 1047. Convenient air travel has been cited as a circumstance that may impact convenience relative to party witnesses and non-party witnesses alike. *See Rehmeyer*, 2017 WL 2079887, at *5 (observing that air travel to and from Philadelphia is significantly easier than travel to and from Harrisburg); *Lesser ex rel. Lesser v. Camp Wildwood*, No. 01 Civ. 4209, 2002 WL 1792039, at *5 (S.D. N.Y. Aug. 2, 2002) (non-stop flights available to New York were

---

[10] As an aside, the Court notes that the Delaware County Courthouse is roughly equidistant, if not closer, to the Philadelphia International Airport than is the Philadelphia County Court of Common Pleas. If convenience alone was the true consideration, Plaintiff would have filed in Delaware County.

more convenient than flights to Maine, which required one layover). However, as Plaintiffs point out in their Complaint, Hamilton Beach and Amazon are worth hundreds of millions and hundreds of billions of dollars, respectively. *See* Pls.' Compl. at 3-4. Given the Defendants' relative financial condition, it is hard to imagine a forum so inconvenient that it would cripple their ability to defend there. This, combined with the fact that litigating in Pittsburgh would certainly save Plaintiffs the expense of airfare and lodging counsels in favor of transfer to the Western District.

The fifth private factor, convenience of non-party witnesses, does not weigh heavily on the Court's analysis. Important to note is that convenience of witnesses in only considered "to the extent that witnesses may be actually unavailable." *Jumara*, 55 F.3d at 879. Defendants contend that they will be unable to avail themselves of Fed. R. Civ. Pro 34 (entering on land for inspection or other purposes) and Fed. R. Civ. Pro 45(c)(1) (extending plenary subpoena power over persons within 100 miles of residence, employment, or the regular transaction of business) with respect to Pittsburgh witnesses. Defs.' Sur-reply at 3.

Plaintiffs are likewise worried about a witness who suffered a similar injury to that of Mrs. Seidman who will help establish the defectiveness of the Urn's design. *See* Pls.' Br. in Opp'n at 10. According to Plaintiffs, this witness lives within the 100-mile subpoena power of the Eastern District but outside the reach of the Western District. *Id.* Plaintiffs also argue that their daughter, currently living in Los Angeles, is a key witness as she cared for Mrs. Seidman during her recovery. *Id.* Finally, Plaintiffs mention that an expert witness lives in Middletown, Delaware. *Id.*

The Undersigned concludes that this factor does not favor either party. First, Defendants' corporate witnesses in this instance are presumed available anywhere as they have expressed no concerns about defending in the Western District. *See Coppola*, 250 F.R.D. at 199. Similarly, Plaintiffs' expert is likely to show up when and where he is paid to be. Moreover, Plaintiffs' observation regarding the hourly flights between Philadelphia and Pittsburgh lends itself to the fact that a Delaware expert would have little trouble traveling to the Western District.[11] *See* Pls.' Br. in Opp'n at 9.

It is likely that UPMC witnesses will be called to testify by both parties. While the use of videotaped depositions at trial for medical professionals is well established, *Connors v. R&S Parts & Services, Inc.*, 248 F. Supp. 2d 394, 396 (E.D. Pa. 2003), to the extent that live testimony is requested from these professionals, they are all based in the Western District. Conversely, while a witness who suffered similar serious injuries as a result of the Urn's alleged defectiveness would support Plaintiffs' claims, certainly Plaintiffs' case does not wholly rest on a prior customer's injury. In any event, neither party has stated that any witness is actually unavailable to testify. Accordingly, this factor is a wash.

The sixth private factor, the location of books and records, is similarly limited to the extent that certain files cannot be reproduced in the alternative fora. *Jumara*, 55 F.3d at 879. Technological advances since the Third Circuit's decision in *Jumara*

[11] With respect to Plaintiffs' daughter – the fact that she was willing to care for Mrs. Seidman during her recovery seems to indicate that she would be willing to appear for trial in the same area. *See* Pls.' Br. in Opp'n at 10. In any event, Los Angeles is far enough away from Pennsylvania that it cannot be discernably more convenient to fly over the Western District and pay for lodging here in the Eastern District all in the name of efficient air travel.

have rendered this factor all but obsolete.  *See Coppola*, 250 F.R.D. at 200.  While Defendants briefly suggest that litigating in the Western District would provide convenient access to the scene of the incident, neither party asserts any arguments directly related to this factor.

### ii.  Public Factors

Both parties' analysis of the public factors are wanting.  Based on the Court's examination, the first two public factors – the enforceability of the judgment and practical considerations that could make the trial easy, expeditious, or inexpensive – are inapplicable in this circumstance.  The fifth and sixth public factors – the public policy of the fora and the familiarity of the trial judge with the applicable state law in diversity cases – are also inapt, as both venues are within Pennsylvania.  This leaves public factors three and four.

The third public factor, the relative administrative difficulty in the two fora resulting from court congestion, has not been given great weight in the Third Circuit. *See PNC Bank, N.A. v. United Servs. Auto. Ass'n*, No. CV 20-1886, 2021 WL 2209245, at *19 (W.D. Pa. June 1, 2021) ("district courts within the Third Circuit have not placed 'great importance' on this factor.'").  Defendants do not make a meaningful argument with respect to this factor.  However, in response to Plaintiffs' observation that as of June 2024 the Western District was significantly more congested than Eastern District, Defendants contend that Plaintiffs "misconstrue the 'court congestion' factor [to mean] that a faster time to verdict means less court congestion." Defs.' Sur-reply at 5 n.8; Pls.' Br. in Opp'n at 11.

The Federal Court Management Statistics (Stats) as of December 31, 2024, seem to hold consistent with Plaintiffs' representation that matters move from filing to **trial** more quickly in the Eastern District. *See* https://perma.cc/RWJ6-ZHKM. However, the Stats also indicate that civil matters in both districts move from filing to **disposition** at a similar pace (a median 4.8 months in the Eastern District compared to a median 6.6 months in the Western District). *Id.; cf. Rehmeyer*, 2017 WL 2079887, at *5 (accepted measure of court congestion is the median time from filing to **disposition** of civil cases). Further, the Stats show a 14% decrease in total filings in the Western District over the last year while filings in the Eastern District increased 21%. *Id.*

Notwithstanding the foregoing, Defendants have not proved that this factor weighs in favor of transfer. This Court is not omniscient and cannot predict this case will head to trial so early in litigation – realizing the only significant disparity in the relative fora. Whatever the distinction, it certainly cannot be categorized as "administrative difficulty" or "congestion." However, as an empirical matter, claims are disposed more quickly in the Eastern District. Looking solely at the speed at which the parties will reach the finish line, the Eastern District is the friendlier venue and this counsels, just slightly, against transfer.

The fourth public factor, local interest in deciding local controversies at home, is linked with the Court's above consideration regarding which forum has the most logical connection to the facts giving rise to the suit. The obvious public concern in this matter is related to the burden on the Eastern District to administer and adjudicate a claim that is unconnected to this community.

The Supreme Court has long recognized that "[l]itigation in an inconvenient forum does not harm the [parties] alone." *Ferens v. John Deere Co.*, 494 U.S. 516, 529 (1990). Convenience of the Court must also be a consideration. *Id.* District courts in this Circuit have held firm to the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.* at 529-530 (*citing Gulf Oil Corp.*, 330 U.S. at 508-509); *see also Butz v. Schleig*, No. 09-761, 2009 WL 971410, at *7 (D.N.J Apr. 7, 2009); *Coppola*, 250 F.R.D. at 200-201 (when action involves injuries sustained in a particular locale, the public interest supports adjudication in that locale rather than in a remote location). In this Court's view, suit in a local forum also helps distribute the burden of lawsuits in accordance with the population. *See* Mark A. Behrens & Cary Silverman, *Litigation Tourism in Pennsylvania: Is Venue Reform Needed?*, 22 Widener L.J. 29, 30 (2012). Relatedly, the Stats also indicate that a greater number of jurors present for jury selection in the Western District (56.1 jurors as compared to the Eastern Districts 42.4).

In fairness, the fact that the Urn was marketed and sold by Amazon makes it likely that it was used and delivered nationwide. *See Rehmeyer*, 2017 WL 2079887, at *5. It can not be said that the Eastern District has zero interest in an allegedly defective product that its citizens may own. However, considering the lack of any other connection to the Eastern District, this Court is unconvinced that this factor weighs in Plaintiffs' favor.

## IV.    CONCLUSION

All of the foregoing points to an additional consideration impacting the Court's analysis in this matter.  "Courts know from experience that the selection of a forum is sometimes dictated not only by the search for justice but the temptation" to realize a perceived strategic advantage by one of the parties.  *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1029 (3d Cir. 1980).  It is no secret that "Philadelphia ... is reputed to be especially favorable to tort plaintiffs."  *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 153-154 (2023) (Alito, J., concurring).

Plaintiffs had the absolute right under Pennsylvania state law to bring this case in the Philadelphia County Court of Common Pleas.  *See generally Hangey v. Husqvarna Professional Products, Inc.*, 304 A.3d 1120 (Pa. 2023).  While it is the public policy of the State to liberally permit venue across its 67 counties, the State's venue provisions are procedural rather than substantive.  *See Connors*, 2004 WL 834726, at *5.  Accordingly, federal procedural law governs.[12]  It is difficult for this Court – post-removal – to overlook the fact that Plaintiffs have voluntarily given up a natural homecourt advantage to sue in a forum that has no logical connection to their claims.  *See* Behrens & Silverman, at 30-31.  While this Court will avoid open

---

[12] In this way – Pennsylvania's permissive venue regime allows matters that satisfy Pennsylvania's "quantity and quality" test for venue in Philadelphia, to always be removed to the Eastern District of Pennsylvania.  In this way, Pennsylvania's venue rules are tethered to Section 1441 in a way that creates proper venue in the Eastern District of Pennsylvania for a case which likely could not have been brought here in the first instance.  If a party then moves for transfer under Section 1404(a), or if the court in its own analysis determines venue is better laid elsewhere, it is then left to the court to properly apply *Jumara*.

speculation as to why Plaintiffs prefer the Eastern District,[13] it finds it hard to accept that convenient airport rationale in light of all other circumstances.

"[S]ection 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883 (*citing Stewart*, 487 U.S. at 29). As previously stated, much of the Defendants' briefing was problematic. However, the Court's independent analysis leads to the conclusion that systemic integrity and fairness demand this Court transfer this matter to the Western District of Pennsylvania.

An appropriate order will follow.

<div style="text-align: right;">

BY THE COURT:

_____
GAIL A. WEILHEIMER,   J.

</div>

DATE: March 21, 2025

---

[13] *See* WRIGHT & MILLER § 3854 (Courts typically do not express a view on jury's impact on verdict); *but see Jumara*, 55 F.3d at 885 (Garth, J., dissenting) (court was informed at oral argument that an arbitrator appointed from within the geographical scope of the Eastern District was likely to award higher damages).